# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GARRETT V. HICKS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-16-478-SPS |

## OPINION AND ORDER

The claimant Garrett Hicks requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1]Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born April 19, 1993, and was twenty-two years old at the time of the administrative hearing (Tr. 41). He completed the twelfth grade, and has no past relevant work (Tr. 28, 175). The claimant alleges inability to work since July 1, 2013, due to scoliosis, club feet, and attention deficit hyperactivity disorder (Tr. 174).

### Procedural History

On October 16, 2012, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Deirdre O. Dexter, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 28, 2015 (Tr. 11-30). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform less than the full range of sedentary work, *i. e.*, he could lift/carry/push/pull ten pounds occasionally and five pounds frequently, stand/walk for up to two hours in an eight-hour workday, and sit six hours in an eight-hour workday with the option, in addition to normal breaks, to stand for ten minutes every hour without leaving the workstation. Additionally, she determined that he could occasionally climb ramps and stairs, and stoop, but that he could never climb

ladders/ropes/scaffolds, kneel, crouch, crawl, or be exposed to unprotected heights or moving mechanical parts (Tr. 16-17). The ALJ concluded that although the claimant had no past relevant work to return to, he was nevertheless not disabled because there was work he could perform, *i. e.*, document preparer, charge account clerk, and telephone solicitor clerk (Tr. 27-29).

**Review**

The claimant's sole contention of error is that the ALJ erred in evaluating the opinion of one of the claimant's treating physician opinions. The Court finds this contention unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of congenital bilateral club feet status post-surgical correction at five months, and idiopathic scoliosis status post T2 through T12 posterior spinal fusion, as well as the nonsevere impairment of ADD/ADHD (Tr. 13-15). The medical evidence relevant to this appeal reveals that the claimant was born with club feet, which were surgically corrected when he was five months old (Tr. 290). Additionally, he had scoliosis and in 2009 underwent a posterior spinal fusion from T2 to T12 with iliac crest bone graft (Tr. 282, 403, 408). He was prescribed physical therapy but discontinued it, reportedly due to finances (Tr. 435). The claimant was also diagnosed with attention deficit disorder in his childhood which was managed by medication, although treatment notes indicate that they considered testing and possible special education (Tr. 295). In March 2015, treatment notes reflect that the claimant reported worsening back pain over the previous six months (Tr. 401).

On July 12, 2014, Dr. Sung Choi, M.D., completed a physical examination of the claimant (Tr. 273). He described a notably inverted left foot with decreased ability to walk on his toes, and noted that he could heel walk but had extreme difficulty raising up on either foot with respect to plantar flexion (Tr. 274). The cervical spine was non-tender with full range of motion, while the lumbar spine was tender with full range of motion. With respect to his scoliosis, Dr. Choi noted that the claimant had a noticeably raised right upper back upon flexion of his lumbar spine (Tr. 275). However, his gait was safe and able and he did not require a walking aid, although he had decreased ability to walk on his toes and could only heel walk with extreme difficulty (Tr. 275). In summary, Dr. Choi found that the claimant had residual pain and difficulty walking as a result of his congenital club feet, and that his scoliosis caused him chronic back pain that he could not further objectively assess and therefore recommended orthopedic evaluation (Tr. 275). He recommended the claimant for "any sort of low-impact non-physically intensive work including any kind of desk or administrative-type job" (Tr. 275).

On May 12, 2015, the claimant's back surgeon, Dr. William Puffinbarger, completed a medical statement regarding absences from work and pain as to the claimant (Tr. 366-367). He indicated that, due to back pain, the claimant would be absent from work three or more days per month (which was the highest number available for the checked boxes) (Tr. 366). He described the claimant's pain as present, but that it would not prevent adequate functioning, and ascribed the pain to his history of idiopathic scoliosis and spinal fusion surgery (Tr. 367). He then completed a questionnaire regarding sedentary work requirements, noting, *inter alia*, that the claimant could stand/walk for up to two hours in

an eight-hour workday, that it was unknown if he could sit for up to six hours in a normal seated position, and that he could lift/carry ten pounds and lift five on a repetitive bases, but that he could not maintain his head in a flexed downward position for extended periods in an eight-hour workday (Tr. 368). He additionally noted that the claimant would likely take unscheduled breaks, but that he could medically sustain an eight-hour workday and be expected to attend on a sustained basis (Tr. 368). In support, he noted the claimant's history, as well as low back pain that was sharp, constant, worsening, and that the claimant "cannot sit still" (Tr. 369). He cited paraspinous tenderness and "neuro intact" as clinical findings and objective signs (Tr. 368). As to further questions, he indicated that he was not sure of the answers, noting that the claimant needed a formal functional evaluation, although he did indicate (consistent with his earlier assessment) that the claimant could lift/carry less than ten pounds frequently and ten pounds occasionally, and that he needed a job that permitted him to sit/stand at will (Tr. 371-372).

On June 8, 2015, Dr. Paul Thomas, the claimant's treatment provider for ADD, also completed a statement indicating that the claimant would be absent from work three or more days per month (the highest number available of the checked boxes on that form), citing to the claimant's scoliosis and his inability to sit for long periods of time (Tr. 389-390). In contrast to Dr. Puffinbarger, however, he indicated that the claimant would not be able to attend any employment on a sustained basis, although he agreed that the claimant would need to take unscheduled breaks (Tr. 390). On another form, he indicated that the claimant would be absent from work about four days per month but not more than four days per month (Tr. 395).

State reviewing physicians determined that the claimant could perform light work with no additional limitations (Tr. 83-84, 93-94).

In her written opinion, the ALJ thoroughly summarized the claimant's testimony, as well as the voluminous medical evidence contained in the record. As relevant to this appeal, the ALJ discussed all of the opinion evidence in the record, including the opinion of Dr. Puffinbarger. She summarized Dr. Puffinbarger's treatment notes from 2009-2010 around the time of the spinal fusion surgery, noting the claimant was ultimately released from treatment on January 5, 2010, to perform activities as tolerated (Tr. 20). She then noted that Dr. Puffinbarger next saw the claimant on March 24, 2015, at which time a stable lower lumbar curve was noted and the claimant was recommended to physical therapy (Tr. 20, 22). The ALJ then summarized Dr. Puffinbarger's medical source statements, noting that the claimant asserted this proved a less than sedentary RFC but that the exertional range did not exclude the performance of work on a regular and continuing basis (Tr. 22-23). She noted that Dr. Puffinbarger declined to express an opinion on a number of categories, deferring to a formal functional capacity evaluation, although he did express an opinion that the claimant needed a sit/stand at will option and to take unscheduled breaks (Tr. 23). She found inconsistent his indication that the claimant's pain would cause only minimal effect on his ability to perform work activities, and that he indicated on one that the claimant would miss three days then stated it was unknown how many days he would miss. She again pointed out the March 24 treatment notes related to back pain and tenderness, and found that these examination findings did not support a sit/stand at will option, unscheduled breaks, and missing multiple days per month (Tr. 24). She further

noted that the claimant reported he cannot sit still, but also reported watching television and video games two hours a day, as well as reading and writing short stories (Tr. 24). She therefore gave little weight to that portion of Dr. Puffinbarger's medical source statement, while giving great weight to Dr. Puffinbarger's opinion that the claimant could do no more than sedentary work, finding that conclusion related to his specialty, was consistent with the other medical opinions in the file, and was supported by longitudinal findings and diagnostic studies (Tr. 24). She also gave great weight to Dr. Choi's opinion, and little weight to the state reviewing physician opinions that the claimant could perform light work (Tr. 24).

The claimant contends that the ALJ failed to properly account for all the limitations prescribed in Dr. Puffingbarger's opinion, particularly his check mark indicating that the claimant could not maintain his head in a flexed downward position for extended periods in an eight-hour workday. As a treating physician, the ALJ was required to give Dr. Puffinbarger's medical opinion controlling weight if his opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). Even if the ALJ did conclude that Dr. Puffinbarger's opinion was not entitled to controlling weight, she was nevertheless required to determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in

[§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. Those factors are: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decided to reject a medical opinion entirely, she was required to "give specific, legitimate reasons for doing so[,]" *id.* at 1301, so it would be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

As noted above, the ALJ adequately discussed and analyzed Dr. Puffinbarger's opinion, at length. The claimant asserts that Dr. Puffinbarger's check mark indicating that the claimant could not maintain his head in a flexed downward position for extended periods in an eight-hour workday was ignored by the ALJ, but the ALJ specifically acknowledged it in her opinion (Tr. 23). The ALJ thus specifically addressed Dr. Puffinbarger's findings, and *did consider* his opinion in accordance with the appropriate standards. Based on this analysis, the ALJ did not commit error in failing to include any additional limitations suggested by the claimant. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). The Court therefore finds that the ALJ considered his opinion in accordance

with the appropriate standards and properly concluded it was not entitled to controlling weight. The ALJ's opinion was therefore sufficiently clear for the Court to determine the weight assigned this opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 27th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**